## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                    No. 17-cr-3057-WJ-2

VERONICA RODRIGUEZ-ARMENDARIZ,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### REJECTING PROPOSED RULE 11(c)(1)(C) PLEA AGREEMENT

THIS MATTER comes before the Court following a hearing on Defendant's Sentencing Memoranda (**Docs. 44, 45, 49**) and the United States' Sentencing Memorandum (**Doc. 46**). Having reviewed the pleadings of the parties and the reports from the United States Probation Office (**Docs. 41, 50**), heard the oral arguments of counsel, and considered the applicable law, the parties' request that the Court accept the Rule 11(c)(1)(C) plea agreement (**Doc. 36**) to a specific sentence of 0–6 months' incarceration is not well-taken, and is, therefore, **REJECTED.**

### BACKGROUND

Defendant Veronica Rodriguez-Armendariz ("Rodriguez-Armendariz" or "Defendant") and her co-defendant husband Hector Ceballos-Ceballos ("Ceballos-Ceballos") are charged with conspiracy pursuant to 21 U.S.C. § 846 for cocaine distribution (Count 1). Doc. 2. Ceballos-Ceballos is also charged with violation of 21 U.S.C. § 841 (Count 2, possession with intent to distribute cocaine), 18 U.S.C. § 924(c) (Count 3, using and carrying a firearm during and in relation to a drug trafficking crime), and 18 U.S.C. § 922(g)(5) (Count 4, alien in possession of a firearm). *Id.* Rodriguez-Armendariz reached a plea agreement with the Government pursuant to Federal

Rule of Criminal Procedure 11(c)(1)(C) for a specific sentence of 0–6 months' incarceration on Count 1. Doc. 36, ¶ 12(a). After reaching the Rule 11(c)(1)(C) deal, the United States Probation Office ("Probation") released Rodriguez-Armendariz's Pre-Sentence Report ("PSR"), in which Probation calculated the United States Sentencing Guidelines range to be 46–57 months, with a total offense level 23 and criminal history category I. Doc. 41, PSR, ¶¶ 20–30, 53. Probation reached the same determination for Ceballos-Ceballos. Doc. 51, ¶¶ 22–32, 62. Ceballos-Ceballos reached a Rule 11(c)(1)(C) plea agreement for 37–46 months' incarceration for Counts 1, 2, and 4. Doc. 38, ¶ 14. His sentencing hearing is set for November 7, 2018.

In her plea agreement, Rodriguez-Armendariz made the following admission:

> On April 24, 2017, in Bernalillo County, in the District of New Mexico, I knowingly and intentionally agreed with my husband, Hector Ceballos-Ceballos, to unlawfully sell cocaine to drug customers throughout Albuquerque. My husband and I used our home to package cocaine and store drug supplies, drug paraphernalia, and drug money. My husband was in possession of approximately 57 small baggies of cocaine at the time of his arrest. The New Mexico Department of Public Safety Forensic Laboratories conducted a forensic chemical analysis which showed that the drugs that my husband possessed were in fact cocaine. I was aware of my husband's cocaine trafficking activities at all times and helped him sell cocaine. I had in my home $9,117 which was proceeds of cocaine trafficking.

Doc. 36, ¶ 10. Her husband's plea agreement states that he distributed cocaine for approximately one year, which Rodriguez-Armendariz admitted to being "aware of" at all times, and that Rodriguez-Armendariz helped package the fifty-seven baggies of cocaine discovered on Ceballos-Ceballos at the time of his arrest. Doc. 38, ¶ 12.

The great discrepancy in the United States Sentencing Guidelines ("Sentencing Guidelines") range calculations in Rodriguez-Armendariz's Rule 11(c)(1)C) agreement and her PSR comes from the Government's admitted failure to account for the drug quantity equivalency of $9,117.00 found inside Rodriguez-Armendariz's purse, which she admitted was proceeds of

cocaine trafficking. Probation converted the $9,117.00 to equal 455 grams of cocaine, for a total of 475.39 grams of cocaine attributable to both defendants. PSR, ¶ 15. The Government admits that it underestimated the base offense level for Rodriguez-Armendariz when it extended the plea offer, as the Government calculated the base offense level to be 12, based on less than fifty grams of cocaine. Doc. 46 at 9. While the Government admits the mistake in estimating the base offense level for Rodriguez-Armendariz, the Government has stood by its decision to enter into the Rule 11(c)(1)(C) with Rodriguez-Armendariz and requested that the Court accept said plea agreement.

Additionally, Probation applied enhancements that the Government apparently did not anticipate and that prevented Rodriguez-Armendariz from being eligible for safety-valve consideration. Doc. 46 at 9; PSR, ¶ 21; Doc. 50 at 1–2. Rodriguez-Armendariz has not objected to the conversion of the $9,117.00 to 455 grams of cocaine, for a total amount of 475.39 grams of cocaine. PSR, ¶ 15. She has filed objections to not receiving reductions for the safety valve consideration and for a minor role, as well as an objection to an enhancement for maintaining a premises for drug distribution and a firearms enhancement. Doc. 49.

Rodriguez-Armendariz and her husband have consented to removal from the United States after their terms of incarceration. Doc. 36, ¶ 23; Doc. 38, ¶ 24. They have two children, ages eleven and thirteen, both of whom are U.S. citizens and have some cognitive or intellectual limitations. At the October 9, 2018 hearing, Rodriguez-Armendariz identified grounds for a downward variance to support the request that the Court accept the Rule 11(c)(1)(C) plea and impose a sentence of 0–6 months' incarceration. After expressing concern about a sentencing disparity between Rodriguez-Armendariz and Ceballos-Ceballos, the Court continued the sentencing hearing until it was prepared to rule on the plea agreement. The Court now rejects the Rule 11(c)(1)(C) plea agreement proposed by Rodriguez-Armendariz and the Government because a

sentence of 0–6 months' incarceration for Rodriguez-Armendariz is not a sentence that is sufficient to satisfy the goals of sentencing.

## DISCUSSION

### I.      Relevant law on Rule 11(c)(1)(C) plea agreements

The Tenth Circuit explained in *United States v. Robertson*, 45 F.3d 1423 (10th Cir. 1995), that "[i]n addressing the question of whether, and under what circumstances a district court may reject a plea agreement entered into between the defendant and government, our starting point is Rule 11 which describes the procedures for the acceptance or rejection of those agreements." 45 F.3d at 1437. The Circuit further provided that "[w]hile Rule 11 vests district courts with the discretion to accept or reject plea agreements, the rule does not define the criteria to be applied in doing so. On the contrary, so long as district courts exercise sound judicial discretion in rejecting a tendered plea, Rule 11 is not violated." *Id.* (citation omitted); Fed. R. Crim. P. 11(c)(3)(A); *see United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) ("There is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion." (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)) ; *see also Morgan v. United States Dist. Court (In re Morgan)*, 506 F.3d 705, 710 (9th Cir. 2007) ("Nowhere does Rule 11 define the criteria by which a district court should exercise the discretion the rule confers, or explain *how* a district court should determine whether to accept a plea agreement.").

Federal Rule of Criminal Procedure 11(c)(1)(C) allows the prosecution and the defendant to agree to a specific sentence range, and if the Court accepts a plea agreement pursuant Rule 11(c)(1)(C), then it is bound to impose a sentence within the agreed upon range. Fed. R. Crim. P. 11(c)(1)(C). But "[b]ecause sentencing is within the exclusive purview of the district court, the court has a wide range of discretion to either accept or reject sentence bargains, as contemplated

by Rule 11(c)(1)(B) and (C)." *United States v. Macias-Gonzalez*, 219 F. App'x 814, 817 (10th Cir. 2007). Indeed, federal sentencing law requires the sentencing judge to impose "a sentence sufficient, but not greater than necessary," to comply with the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors. 18 U.S.C. § 3553(a). Although the Sentencing Guidelines are not binding, "[i]n deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018). Sentence bargaining, as reached here, severely "implicates judicial discretion by limiting the sentencing power of the district court." *Robertson*, 45 F.3d at 1437 (noting specific sentence plea agreements "attempt to completely curtail that discretion, [and] a district court's decision to preserve that aspect of judicial power is not an abuse of discretion").

## II.     Parties' arguments

The Tenth Circuit has stated that "to insure district courts exercise sound judicial discretion and adequately respect the principle of prosecutorial independence, courts must set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it." *Robertson*, 45 F.3d at 1438. The Government asks the Court to accept the plea because it is obligated to honor its agreement and the "prosecutor in this case has done his best to act in good faith and fashion a plea agreement that is consistent with the goals set forth in 18 U.S.C. § 3553(a)(1)–(7)." Doc. 46 at 11. The Government asserts that entering the plea saved considerable resources for the parties and the investigative team and that the guilty plea "relieved this Court and its staff of burdens of what would have been substantial motion litigation and a trial[.]" *Id.* at 10. The Government posits that Rodriguez-Armendariz is less culpable than her husband, and that although "Rodriguez is certainly guilty, . . . her role was clearly lesser than that of Ceballos-Ceballos." *Id.* at 11. The Government further argues that "Rodriguez's personal history and

characteristics are generally favorable" and points to her bachelor's degree in Business Administration, obtained in Mexico, as well as her employment history as a high school teacher in Mexico. *Id.* Additionally, the Government relies on the unlikelihood of recidivism by Rodriguez-Armendariz, specifically because she is the forty-three-year-old primary caregiver of her two children and has no prior criminal convictions. *Id.* It notes that Rodriguez-Armendariz has accepted responsibility and "has demonstrated genuine remorse and a desire to turn her life around." *Id.* Finally, the Government points out that she is subject to deportation and will never be authorized to return to the United States. *Id.*

Defendant Rodriguez-Armendariz maintains that a downward variance to parallel the Rule 11(c)(1)(C) agreement in this case would be appropriate and is supported by several cases. Doc. 49 at 7. She argues that the cases she cites demonstrate that the "departure/variance to which the parties have agreed in Ms. Rodriguez' case is not unprecedented. And for the reasons set forth in the parties' sentencing memoranda, a sentence of time/served is sufficient, but not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C. § 3553." *Id.* at 9–10. Defendant asserts that she has the support of her family and that she would return to care for her two special needs children, which is her foremost concern. Defendant provides citations to journal articles indicating the relationship between family ties and lower recidivism rates. *Id.* at 10. Defendant also relies on her less culpable role in the conspiracy and argues that she "principally helped [her husband] package the drugs" and was not directly involved in selling them. *Id.* Defendant asserts that she became involved in this conspiracy because her family "could no longer survive with just the husband's wages." *Id.* at 11. Defendant concludes her argument by stating,

> All the couple has ever wanted from the beginning was to take responsibility for the offense so that Ms. Rodriguez, who is the most employable and has taken care of all of the children's educational and medical needs, would not have to suffer along with him in prison at length while their two children were left alone. Their

children require both medical and education assistance without which they will continue to fall further behind in their development.

*Id.* She notes that both her and her husband will be deported after their terms of incarceration, and that she plans to re-establish herself and the family in Mexico and seek employment there. *Id.*

## III. Analysis

At this time, the Court will not rule on Rodriguez-Armendariz's objections to the Sentencing Guidelines calculations because the Court must allow Rodriguez-Armendariz the opportunity to withdraw her guilty plea if the Court rejects the Rule 11(c)(1)(C) plea agreement.[1] Furthermore, the evidence at issue and the factual disputes raised by Rodriguez-Armendariz regarding the firearm enhancement and safety-valve eligibility likely require an evidentiary hearing. Even without ruling on the Sentencing Guidelines objections, when the Court considers Rodriguez-Armendariz's admission in the plea agreement, the proposed sentence of 0–6 months is insufficient to satisfy the goals of sentencing. The Court has considered the factors in § 3553(a), and several of those factors weigh heavily against accepting this Rule 11(c)(1)(C) plea agreement.[2] A sentence of 0–6 months creates an unwarranted sentence disparity with other similarly situated defendants, and with her co-defendant husband. § 3553(a)(6). Additionally, in considering the kinds of sentence and sentencing range established for the offense committed by this category of

---

[1] Rodriguez-Armendariz has the opportunity to withdraw her guilty plea in light of the Court's rejection of the Rule 11(c)(1)(C) plea agreement. *See United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009) ("To the extent the government . . . agrees to a specific sentence or sentencing range, a court may accept [the] agreement, reject it, or defer a decision until the court has reviewed the presentence report. If the court subsequently rejects this plea agreement, it must advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea." (citing Fed. R. Crim. P. 11(c)(3)(A) and (c)(5)). Thus, it would be premature to rule on the Sentencing Guidelines objections while rejecting the Rule 11(c)(1)(C) plea. Additionally, the Court intends to allow the parties to make further argument and offer evidence in support of or in opposition to the Sentencing Guidelines enhancements in the PSR if appropriate in the future.

[2] The need to provide restitution to any victims of the offense (§ 3553(a)(7)) does not weigh into the analysis because restitution is not recommended in this case. PSR, ¶ 66. Additionally, the need to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner (§ 3553(a)(2)(D)) is not a strong factor either way in the analysis, but it does not weigh against the Court's decision to reject the plea agreement.

defendant, as well as any pertinent policy statement issued by the Sentencing Commission, the request for a downward variance to 0–6 months is not supported by either. § 3553(a)(4), (5). Finally, the proposed sentencing range of 0–6 months does not meet the goals of sentencing provided in § 3553(a)(2) because it does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for this offense.

It is within the Court's sentencing authority to reject the parties' attempt to bind this Court's exercise of judicial discretion when the plea agreement does not satisfy the goals of sentencing. *Robertson*, 45 F.3d at 1439 ("There can be little doubt that rejecting a plea agreement due to the court's refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion.").

### A.      Sentencing disparity

The parties have identified grounds for a downward variance and made arguments about the applicable Sentencing Guidelines enhancements. Still, the Court finds that the sentencing disparity between Rodriguez-Armendariz and other similarly situated defendants, as well as the sentence disparity with her co-defendant husband, goes against the sentencing goal of avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As the Tenth Circuit explained in *United States v. Martinez*, 610 F.3d 1216 (10th Cir. 2010),[3] the district court may consider co-conspirator sentence disparities in addition to nationwide disparities. *Id.* at 1228. The Circuit in *Martinez* noted that "[n]onetheless,

---

[3]      In *Martinez*, the Tenth Circuit ruled that there was not a sentencing disparity between those codefendants when one had a Rule 11(c)(1)(C) agreement and one did not. 610 F.3d at 1228–29. There, the sentencing court ultimately imposed the same sentence upon the defendants. *Id.* The Circuit explained that it defers to the weight the district court gives each of the § 3553(a) factors and its determination of whether a disparity is unwarranted. *Id.* This case is distinguishable from *Martinez* because here both defendants have Rule 11(c)(1)(C) agreements, which stipulate to different sentences, and unlike in *Martinez*, the plea agreements do not account for the great disparity.

disparate sentences are allowed where the disparity is explicable by the facts on the record." *Id.* (citation omitted).

The record, however, does not support the disparate sentences between Rodriguez-Armendariz and her co-defendant husband. Probation reached the same recommended Sentencing Guidelines sentence of 46–57 months for these defendants based on their admissions and offense conduct. While the record indicates that Rodriguez-Armendariz did not directly participate in the sale of narcotics outside the home, she admitted that her role was packaging and preparing the equivalent of at least 455 grams of cocaine for distribution. Doc. 36, ¶ 10; PSR, ¶ 15. And although Rodriguez-Armendariz was not charged for possession of the firearms recovered in the home, she fully admitted to conspiring with her husband to sell cocaine in Albuquerque and using their home, where the firearms were recovered, for drug trafficking purposes. Doc. 36, ¶ 10. Considering that Ceballos-Ceballos has reached an agreement for 37–46 months, imposing a sentence of 0–6 months upon Rodriguez-Armendariz creates a sentencing disparity between the two of them that is not explicable by the facts on the record or admitted in their plea agreements. Some disparity may be appropriate because Rodriguez-Armendariz and her husband are not identically situated. For example, Rodriguez-Armendariz may very well be less culpable than her husband and entitled to a minor role adjustment in her Sentencing Guidelines offense level, but the sentences to which the parties attempt to bind this Court in these Rule 11(c)(1)(C) agreements result in an unwarranted sentencing disparity.

Furthermore, a sentence of 0–6 months creates an unwarranted sentence disparity with other defendants who have been found guilty of similar conduct for drug trafficking. The agreed upon specific sentence range was formed in consideration of a base offense level of 12 (*see* Doc. 46 at 9), but Rodriguez-Armendariz's relevant conduct brings her base offense level to 22. PSR, ¶

20. Other defendants with a base offense level of 22 for the drug weight of 475.39 grams of cocaine would be sentenced according to the proper base offense level, even if they received reductions for specific offense characteristics and acceptance of responsibility.

### B. Sentencing range and policy statement

Section 3553(a)(4) provides that the Court shall consider "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . ." issued by the Sentencing Commission and subject to any amendments. § 3553(a)(4)(A). Quoting the policy statement in the Sentencing Guidelines regarding acceptance of Rule 11(c)(1)(C) plea agreements, the Supreme Court of the United States has recently explained that "[t]he court may not accept the [Type C] agreement unless the court is satisfied that '(1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity.'" *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) (quoting USSG § 6B1.2(c)); *see also Freeman v. United States*, 564 U.S. 522, 530 (2011) (plurality opinion)[4] ("That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range." (discussing § 6B1.2)).

In this case, the Government's plea offer was based in large part on a drug weight determination that was mistakenly underestimated by the Government prior to obtaining the PSR. The Government states that "[w]hat the United State did not factor into Rodriguez's sentencing

---

[4]    In *Hughes*, the Supreme Court clarified the rulings in *Freeman* by holding that "a sentence imposed pursuant to a Type-C agreement is 'based on' the defendant's Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." 138 S. Ct. at 1775 ("In addition this Court's precedents since *Freeman* have further confirmed that the Guidelines remain the foundation of federal sentencing decisions.").

range, however, was that the money seized should have been converted into its drug quantity equivalent as correctly reflected in the PSR." Doc. 46 at 9. The degree of the discrepancy is so great here that the Government's plea offer hardly reflects the drug offense conduct as Rodriguez-Armendariz admitted it in her plea agreement, which was that the $9,117.00 recovered in her purse was drug proceeds. Doc. 36, ¶ 10; PSR, ¶ 15 (converting the cash recovered into 455 grams of cocaine); *see United States v. Rutter*, 897 F.2d 1558, 1564 (10th Cir. 1990) (ruling that the sentencing court may additionally consult the PSR to determine relevant conduct). Defendant has not raised an objection to the drug weight conversion in the PSR. While a drug weight discrepancy is always possible—and may at times be acceptable—in a Rule 11(c)(1)(C) plea, the Court does not consider a 400+ gram miscalculation in the drug weight determination for the base offense level to be a "justifiable reason," *Hughes*, 138 S. Ct. at 1773, to accept a Rule 11(c)(1)(C) specific sentence agreement significantly below the advisory Sentencing Guidelines range. Even without ruling on the other Sentencing Guidelines objections and adjustments at this time, a ten-level discrepancy in the base offense level is sufficiently substantial to support the Court's determination that these sentencing factors weigh against accepting the Rule 11(c)(1)(C) plea agreement. 18 U.S.C. § 3553(a)(4), (5); USSG § 6B1.2(c).

### C. Seriousness of the offense, promoting respect for the law, and providing just punishment for the offense

In support of their request, Rodriguez-Armendariz submitted several cases to support her position that the Court should vary downward to accept the specific sentence of 0–6 months. Doc. 49. She cites *United States v. Cavazos*, No. 15-cr-4087-JAP (D.N.M), which was before Senior United States District Judge James A. Parker and involved a downward variance to accept a Rule 11(c)(1)(C) plea for a probationary sentence. In that case, the defendant pleaded guilty to money laundering, and that fact alone creates a sufficient distinction between *Cavazos* and this case

because Rodriguez-Armendariz has pleaded guilty to conspiracy to commit cocaine trafficking. This is a relevant distinction in considering the nature and circumstances of the offense. § 3553(a)(1). In fact, most of the cases provided in Defendant's supplemental brief (Doc. 49) are factually distinguishable because they either involved white collar crimes[5] or extenuating circumstances that exceed those present here.[6] The Court further notes that in the cases listed in Defendant's supplemental brief, the sentencing courts imposed a probationary sentence. In this case, as the defendant is subject to deportation after her term of incarceration, she will be subject to a term of unsupervised supervised release, which will not achieve the goals of a supervised probationary sentence.

The case cited by defense that most supports the parties' request is *United States v. Sayad*, 589 F.3d 1110 (10th Cir. 2009), in which the Tenth Circuit affirmed the reasonableness of a sixty-month probationary sentence when the advisory Sentencing Guidelines range was fifty-seven to sixty months' incarceration. *Id.* at 1113. The defendant in that case was acting as a drug courier transporting eleven kilograms of cocaine, and he pleaded guilty to interstate transport for racketeering. *Id.* Most notably, that defendant had not entered a Rule 11(c)(1)(C) plea agreement, so the district court was free to weigh the § 3553(a) factors and impose a sentence it determined to be appropriate without its judicial discretion being limited by the parties. The Tenth Circuit upheld the sentencing court's weighing of the sentencing factors, particularly reliance on the

---

[5]     *See, e.g.*, *United States v. Cole*, 765 F.3d 884 (8th Cir. 2014), *United States v. Brewer*, 978 F. Supp. 2d 710 (W.D. Tex. 2013), *United States v. Cavazos*, No. 15-cr-4087-JAP (D.N.M.).

[6]     *See, e.g.*, *United States v. Bueno*, 549 F.3d 1176 (8th Cir. 2008) (extensive record about illness of defendant's wife, for whom he was the sole caretaker, and testimony from experts about how she could very likely die, either intentionally or by accident, if defendant were not able to care for her); *United States v. Seiber*, 2005 WL 1801614 (E.D. Tenn. July 29, 2005) (defendant was 69-year old wheelchair-bound widow who continued to fill her deceased husband's OxyContin prescription and was awaiting serious surgery for degenerative disc disease). Thus, while the Court does not dismiss the importance of the situation involving Rodriguez-Armendariz's children, the present case does not rise to the level of those extreme circumstances.

defendant's community ties, family support, lack of criminal history, absence of personal drug abuse, and immaturity. 589 F.3d at 1119 ("In light of the district court's institutional advantage in making findings regarding Sayad's character, its decision that his general naivete and his family and community circumstances weighed in favor of a probationary sentence was not substantively unreasonable."). In *Sayad*, the district court found those factors supported a sixty-month probationary sentence. However, in the instant case, there will not be a supervised probationary sentence and the Court has found that the factors discussed above significantly weigh against a downward variance of 0–6 months.

The Court has also reviewed the character letters and exhibits submitted in support of the sentencing memoranda. Doc. 45. The Court understands that the children both have cognitive or learning disabilities, which require extra attention at home with schoolwork and with some medical care. Rodriguez-Armendariz is their primary caregiver and attends to these needs. The letter from Rodriguez-Armendariz's daughter reflects her desire to have her family reunited and her parents home. These character letters reinforce what the Court sees and hears all too often, and that is the hardship on young children when their parents are incarcerated as a result of criminal conduct. The Court considers these exhibits in reflection of the history and characteristics of Rodriguez-Armendariz (§ 3553(a)(1)), and they demonstrate commendable attributes of Rodriguez-Armendariz, particularly in the care of her children. However, even considering that Rodriguez-Armendariz has no prior criminal history, less chance of recidivism, and considering the articles providing the importance of family unification (Doc. 49 at 10), the factors discussed above outweigh these considerations when it comes to what is in essence the steep downward variance that the parties request.

Finally, a sentence of 0–6 months' incarceration would be insufficient to satisfy the goals of sentencing provided in § 3553(a)(2), including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. In the plea agreement, Rodriguez-Armendariz admitted to using the residence to package cocaine for distribution, as well as using the home to store drug supplies, drug paraphernalia, and drug money. Doc. 36, ¶ 10. Furthermore, she admitted that the $9,117.00 in her purse was drug proceeds, which Probation equated to 455 grams of cocaine. Doc. 36, ¶ 10; PSR, ¶ 15. Therefore, a plain-meaning reading of Rodriguez-Armendariz's admission indicates that her offense conduct contributed to the sale of 455 grams of cocaine by aiding and abetting in drug trafficking and maintaining her home for drug trafficking purposes. As the Court pointed out at the October 9, 2018 hearing, a sentence somewhere in the range of 0–6 months is the sentence this Court frequently imposes upon defendants in criminal history category I who, pursuant to this District's "fast track plea program," plead guilty to the felony charge of illegally reentering the United States in violation of 8 U.S.C. § 1326.  While Rodriguez-Armendariz has no prior criminal history and thus is in the same criminal history category I as those illegal reentry defendants who likewise have no prior criminal history, there is a stark difference in offense conduct involving narcotics distribution compared to criminal conduct involving nothing more than crossing the border without permission from the United States Government. Imposing a sentence of 0–6 months would fail to promote respect for the law, and in fact, may have a contrary implication that assisting in the packaging and distribution of a significant quantity of cocaine is mostly inconsequential conduct. For these reasons, the agreed upon sentence would not provide just punishment for the offense, even considering the grounds for a downward variance that counsel have argued.

The Court also notes its disagreement regarding the Government's assertion that this plea conserves judicial resources. The Court has now used substantial resources to determine whether this plea agreement meets the goals of sentencing, including conducting two hearings, and reviewing case law cited in Defendant's supplemental brief (Doc. 49) and case law located in the Court's own research. *See, e.g.*, Clerk's Minutes, Doc. 47, 9/24/18; Clerk's Minutes, Doc. 53, 10/9/18. This is not among the Court's reasons for rejecting the plea, but the Court notes for the record that it disagrees with the Government's proposition that the plea achieved this purpose.

## CONCLUSION

The Tenth Circuit has explained that specific sentence "pleas directly and unequivocally infringe on the sentencing discretion of district courts." *Robertson*, 45 F.3d at 1439. The Circuit has ruled that a court's rejection of a Rule 11(c)(1)(C) agreement out of concern that its judicial discretion is limited to impose a proper sentence "constitutes the exercise of sound judicial discretion." *Id.* This Court has explained in detail its reasons for rejecting this Rule 11(c)(1)(C) plea agreement and concludes that a sentence of 0–6 months' incarceration is not sufficient to meet the goals of sentencing.

Accordingly, for the reasons set forth in this Memorandum Opinion and Order, the Court **REJECTS** the Rule 11(c)(1)(C) plea agreement (**Doc. 36**) for a specific sentence of 0–6 months.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE